Davis *v.* Easley et al.

WILLIAM DAVIS, Plaintiff in Error, *v.* CHARLES EASLEY et al.,
Defendants in Error.

ERROR TO SCHUYLER.

A party may maintain replevin for boards, made from trees wrongfully cut on his
land. The owner of property wrongfully taken may pursue it, so long as it can
be identified, whatever alteration in form it may assume; unless it is annexed to,
or made a part of, some other thing, which is the principal, as timber converted
into a house.

In an action of replevin, to recover a quantity of boards, made from trees growing in
the open and uninclosed woods of the plaintiff, a part of the same tract of land
being inclosed and occupied by him, to sustain his action, the plaintiff introduced
a deed to himself of the land, and several receipts, showing that he had paid taxes
on the land, which were excluded from the jury:—

*Held,* that the evidence was *primâ facie* sufficient to authorize the plaintiff to main-
tain the action.

THIS cause was heard before MINSHALL, Judge, at the August
term, 1850, of the Schuyler Circuit Court.

The opinion of the court contains a full statement of the case.

R. S. BLACKWELL, for the plaintiff in error.

BROWNING and BUSHNELL, for defendants in error.

The law presumes every person to be in the legal seizin and possession of land to which he has a complete and perfect title. And this seizin and possession is coextensive with his right, and continues until he is ousted by an actual entry into and possession of the land by another, under a claim of right. Angell on Lim. 400, sect. 5.

Every presumption, therefore, is to be made in favor of the true owner, and a bare possession is evidence of no more than the fact of a present occupation by right; for the law will never presume a wrong. Angell on Lim. 404, sect. 6.

These presumptions give rise to the doctrine of adverse possession. A disseisin of the true owner is necessary to uphold it. Actual violence is not requisite; but the adverse possessor must make his entry and take possession under such circumstances, as to repel the presumption of an entry and holding by consent of the true owner, and in subordination to his title. In other words, an adverse possession is an "actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right, either an openly avowed claim, or under a constructive claim, arising from the acts and circumstances attending the appropriation, to hold the land against him who was seized." Angell on Lim. 410, sect. 11.

It is the occupation, with an intent to claim against the true owner, which renders the possession adverse. It is not possession alone, but the fact that it is accompanied with the claim of a fee-simple title, which, by construction of law, is deemed *primâ facie* evidence of such an estate. Angell on Lim. 413, sect. 11.

It is a question of intention, and the jury are to determine the *quo animo.* Angell on Lim. 413, sect. 11; Id. 415, sect. 12.

The possession must be taken under a claim of right; but it need not be a valid title; an entry under color of title is suffi-

cient. Angell on. Lim. 435; 5 Grattan's Rep. 110; Northop v. Wright, 7 Hill, 488; Bank v. Smyers, 2 Strobhart, 28, 29; Gourdin v. Davis, 2 Richardson's Rep. 488; Tillinghast's Adams, 471.

An entry under a deed, from one having no title, is evidence of a seizin in fee, by disseisin. Bradstreet v. Huntington, 5 Pet. 433; Boothby v. Hathaway, 20 Maine Rep. 251; French v. Rollins, 21 Maine Rep. 372; Higbee v. Rice, 5 Mass. Rep. 344.

One who enters into the possession of a part of a tract of land, under a deed or other written evidence of title, is adjudged to be in possession of the whole tract described in his deed. Angell on Lim. 428, sect. 21 and 22; Proprietors &c. v. Laboree, 2 Greenl. 275; Noyes v. Dyer, 25 Maine Rep. 468; Crowell v. Beebe, 10 Verm. 33; Bailey v. Carlton, 12 N. H. Rep. 9; Thomas v. Harrow, 4 Bibb. 563; Clark v. Courtney, 5 Pet. 353; Ellicott v. Pearl, 10 Id. 442; Jackson v. Wheat, 18 Johns. 40; Same v. Newton, 18 Id. 360, 361; Kennebeck v. Springer, 4 Mass. 416; Grafton v. Grafton, 8 S. & M. 90.

The fact that the premises in question was woodland, and adjoined the farm of the plaintiff, gives him a legal possession of the land; particularly as he used it for firewood. Angell on Lim. 433.

Again, where a person purchases land adjoining his residence, he is, in contemplation of law, in possession of both tracts. Hinton v. Fox, 3 Litt. Rep. 383; Ewing v. Burnett, 1 McLean, 268; S. C. 11 Pet. 41.

The tax receipts were admissible to show the extent of Davis's claim. Angell on Lim. 425; 25 Maine Rep. 473.

The true owner being disseized of the freehold, can maintain no action for any injury to his inheritance. Bigelow v. Jones, 10 Peck's Rep. 161.

In all cases, possession under a claim of the fee is *primâ facie* evidence of title. Jackson v. Porter, 1 Paine, 466, 467; Mason v. Parke, 4 Id. 532; Ricard v. Williams, 7 Wheat. 59; Steele v. Logan, 3 A. K. Marsh. 394.

The deed from Louderback to Davis is color of title. It purports to convey the fee-simple; expresses a consideration; covenants against all adverse titles; is valid upon its face, and duly

recorded, and his entry under it was hostile, and in his own right. He took possession under a claim of title; he has continued that possession for thirteen years; he has made valuable improvements; it is a part of his plantation; he cuts his firewood off the land; he has paid all the taxes during his occupancy, and always claimed title in fee. At all events, his title is sufficient against a mere trespasser. Jackson v. Harder, 4 Johns. 202.

*Second.* Again the plaintiff has " claim and color of title made in good faith" within the meaning of the act of March 2, 1839. Laws 1839, p. 266, sect. 1 and 2. The case of Irving v. Brownell, 11 Ill. 402, has not given satisfaction to the bar.

Under the law of                    the possession of the defendant must be under claim of title; but it is not necessary for the possessor to have any written evidence of title. Taylor v. Buckner, 2 A. K. Marsh. 18; McCall v. Nealy, 3 Watts's R. 72.

The law of January 17th, 1835, required " possession by actual residence" under a " connected title." Laws 1835, p. 42, sect. 1.

The act of March 2, 1839, requires — *First*, Actual possession, seven years; *Second*, Under claim and color of a *paper* title, made in good faith; *Third*, And payment of taxes, seven years.

The apparent intention of the legislature, seems to have been to make the law of 1839 more effectual in protecting the *bonâ fide* settler, than the previous laws. And the court, in Irving v. Brownell, have frustrated this intention. In fact, the law of 1839, according to that decision, is a *dead letter* upon the statute-book. " A title which, tested by itself, would appear to be good," would, when accompanied with seven years' possession, be a protection to the settler under the law of 1835. For what object, then, was the law of 1839 enacted? It was senseless and unmeaning, if the court have given it the true construction. As we have seen, the law of 1827, required a possession under a claim of title, written evidence of the claim, and actual residence are unnecessary. The law of 1835, requires " actual residence" under a " connected title" and by the true rule of construction; this chain of title must be *primâ facie* good, that is, when tested by itself, and not with the paramount title. If the latter test was required, the law would be useless. Now the law of 1839, was really intended to protect a still weaker class of titles, than those contem-

plated by the act of 1835. Instead of a " title " it required merely " claim and color of title." In the place of " actual residence " upon the land, it requires " actual possession," which may be by inclosure, cultivation, residence, or any of the various acts, which, according to the principles of the common law, are necessary to constitute a possession of land. And besides " claim and color of title," and " actual possession," the law of 1839 requires this additional fact to concur; the payment of " all taxes legally assessed " on the land for seven successive years. The legislature seem to have acted upon the presumption, that if one entered upon land under claim and color of title, and disseized the true owner, continued his possession for seven years, and paid all of the taxes assessed upon the land during that period, this afforded conclusive evidence of an abandonment by the owner of the paramount title.

In their construction of this statute, the court seem to have been misled by the words " good faith." This means nothing more than that the occupant should not act *malâ fide* by purchasing of one who he knew had no title, or with actual notice of a paramount title in another, or with notice that his own title was defective. In other words he must be honest. He must believe his deed to be valid, and that it conveys to him a good title to the land, although it may turn out that another has a better title. McCall *v.* Nealy, 3 Watts, 72; Moody *v.* Fleming, 4 Geo. R. 119; Den *v.* Hunt, 1 Spencer, 493; Jackson *v.* Thomas, 16 Johns. 301; Bank *v.* Smyers, 2 Strobh. 28 and 29; Angell on Lim. 435; Tillinghast's Adams, 471.

He must enter under a claim of right. His claim must be colorable, that is, give him an apparent right, and he must not act *malâ fide.* This is all that the law requires.

This statute ought to be construed liberally, it is emphatically a statute of repose. Conyers *v.* Kenans, 4 Geo. 317 and 318; Fain *v.* Garthright, 5 Geo. 12.

TREAT, C. J. This was an action of replevin brought by Davis against Charles and Thomas Easley, for the recovery of a quantity of boards. The boards were found by the sheriff in the possession of the defendants, and delivered to the plaintiff. The

Davis *v.* Easley et al.

defendants pleaded two pleas : *First. Non cepit. Second.* That the boards were the property of the defendants, and not the property of the plaintiff.

It appeared in evidence, on the trial, that, in February, 1849, two cherry-trees were standing and growing in the open and uninclosed woods, on a tract of land in Schuyler county, known and designated as one hundred acres off the east side of section twenty-one, in township two north, of range one west of the fourth principal meridian ; that several days afterwards the trees were felled and cut up into saw-stocks, by some person unknown ; that the defendants hauled the stocks to a saw-mill, and had them sawed into boards ; that they removed the boards to their residence, from whence they were taken by the sheriff. The plaintiff then proved, by a witness, that there was a cabin and from one to four acres in cultivation on the tract of land in 1836 ; that the witness entered upon the tract in the spring of 1837, as the tenant of the plaintiff, and remained in possession one year, during which time he cleared and fenced eight acres of the land ; that, in 1838, the plaintiff built a cooper's shop on the tract, which he has used ever since ; that, during the same year, the plaintiff set out an orchard on the tract of from three to five acres, which is about two hundred yards from his house, situate on an adjoining tract belonging to him ; that at the time of the cutting down of the trees, and the hauling away of the logs, there were eighteen or twenty acres of the tract inclosed and under cultivation, besides the orchard ; that the plaintiff, on all occasions, claimed to be the owner of the whole tract, and the improvements thereon had been in his possession, or that of his tenants, ever since 1837 ; and he had cut his firewood on the tract during all of that time. The plaintiff read in evidence a deed from Louderback and wife to himself, for the one hundred acres of land, bearing date the 19th of April, 1836, and acknowledged and recorded during the same month. The deed recited a consideration of $750, and contained covenants of seizin and general warranty. He also read in evidence several receipts of the collector, showing that he had paid all taxes on the land from the year 1840 to 1848, both inclusive. This was all of the evidence in the case. At the instance of the defendants, the court

17 *

afterwards excluded the deed and tax receipts from the consideration of the jury. A verdict was returned in favor of the defendants; and they had judgment for costs, and the return of the property replevied.

If the plaintiff was the owner of the trees, there can be no doubt of his right to maintain replevin for the boards. The property in the trees was not changed by manufacturing them into lumber. The title still continued in the former owner. The property was still capable of being identified. The owner of property, wrongfully taken, may pursue it, so long as it can be identified. Whatever alteration in form it may assume, the owner may reclaim it, in its new shape, if he can establish the identity of the original materials; as where cloth is made into a garment, trees into rails or boards, or iron into bars. The wrongful taker cannot by any act of his own acquire title against the owner, unless he destroys the identity of the thing, or annexes it to, and makes it a part of some other thing, which is the principal; as the conversion of grain into malt, coin into a cup, or timber into a house. 2 Blackstone's Comm. 404; 2 Kent's Comm. 363; Snyder v. Vaux, 2 Rawle, 423; Betts v. Lee, 5 Johnson, 348; Brown v. Sax, 7 Cowen, 95.

Did the court err in excluding the evidence introduced by the plaintiff? A party in the actual possession of land, may maintain trespass against a stranger, for any disturbance of his possession. The law presumes that he is rightfully in possession, until the contrary appears. And in actions of ejectment, and for injuries to the inheritance, the possession of a tract of land by a party, claiming to be the owner in fee, is *primâ facie* evidence of his ownership and seizin of the inheritance, and throws upon his adversary the burden of rebutting the presumption thus raised. Rickard v. Williams, 7 Wheaton, 59; Steele's Heirs v. Logan, 3 A. K. Marshall, 394; Jackson v. Porter, Paine's Rep. 457; Day v. Alverson, 9 Wendell, 223; Mason v. Park, 3 Scammon, 532. In Sawyer v. Newland, 9 Vermont, 383, it was decided that an entry by a party upon land, under a conveyance, and cutting and selling timber from time to time, and exercising acts of ownership over the land, although no part of it was inclosed, was a sufficient possession to maintain an action of trespass against

a stranger. The court said: " To constitute possession, no doubt, there must be an exercise of acts of ownership on the land itself. It is not necessary that the land should be inclosed by a fence, as is sometimes understood." Again : " Cutting wood and timber from year to year, disclaiming any ownership, or perhaps without any claim of title, might be considered as nothing more than trespass; whereas, the same acts on a lot of land marked out, or the boundaries of which were designated by a survey or deed recorded, or by known or acknowledged metes and bounds, and under a claim of title, would be treated as unequivocal acts of possession." In Penn *v*. Preston, 2 Rawle, 14, it was held that the possession of a farm drew to it the possession of the woodland belonging thereto, though not inclosed; and that the party in possession of the farm could maintain trespass against a wrongdoer, for destroying timber in the woodland. It was said by the court : " In this case, beyond a question the possession was such as to comprehend the timber, though not inclosed. I hold, that there is no usage of the country, nor rule of the common law, nor any reason requiring a man to inclose his timber land; and, that for any possible purpose that can be named, the woods belonging to a farm are as well protected by the law without a fence as with one." In Mackin *v*. Geortner, 14 Wendell, 239, proof that the premises were used by the plaintiff as a wood-lot, for the purposes of fuel and fencing, was held to be sufficient evidence of actual possession, to sustain an action of trespass for cutting timber thereon. The court remarked : " The plaintiff had all the possession which can be had of a wood-lot, reserved and used exclusively for fuel, fencing, &c. A constant and uninterrupted use for those purposes, is undoubtedly sufficient to constitute actual possession, and to enable the plaintiff to maintain trespass for any encroachment upon it." A party who enters into land under a conveyance, though from a person having no title, is presumed to enter according to the description in the deed ; and his occupation of a part, claiming the whole, is construed as a possession of the entire tract; and such occupation will enure as an adverse possession of the whole, and, if continued for the length of time prescribed by the statute of limitations, will bar the entry of him who has the legal title.

The possession is considered as coextensive with the claim of title ; and the entry as a disseisin of the true owner to the same extent. Lessee of Clarke *v.* Courtner, 5 Peters, 318 ; Noyes *v.* Dyer, 25 Maine, 468 ; Crowell *v.* Bebee, 10 Vermont, 33 ; Bailey *v.* Carleton, 12 New Hampshire, 9 ; Hinton *v.* Fox, 3 Littell, 380 ; Ellicott *v.* Pearl, 10 Peters, 412 ; Bank *v.* Smeyers, 2 Strobh. 24. The acts and declarations of a person, while in the occupation of a tract of land, may be given in evidence to explain the character and extent of his claim and possession. Jackson *v.* McCall, 10 Johnson, 377 ; Moore *v.* Moore, 21 Maine, 350 ; Shumway *v.* Holbrook, 1 Pickering, 114 ; Rickard *v.* Williams, 7 Wheaton, 59.

In this case, the evidence was *primâ facie* sufficient to authorize the plaintiff to maintain the action. He entered on the land under a conveyance in fee, more than twelve years before the injury complained of was committed. During all of that time, he had the uninterrupted and conclusive possession of a portion of the tract, and claimed title to and exercised acts of dominion over the whole. He continued to extend his improvements, and constantly cut firewood on the part uninclosed. There was no conflicting claim to any part of the tract. He paid the taxes assessed on the entire tract, and exercised all the acts of ownership over it, that are ordinarily exercised by proprietors of timber land. The woodland adjoined his improvements, and formed a part of his plantation. His occupation and acts were all consistent with the title under which he entered. He had all the possession of the part on which the trees were cut, that can well be had of woodland, set apart and used for purposes of fuel and timber. It has been shown, that an inclosure was not necessary to give him the actual possession. And, in the absence of a fence, what other possession can be had of timber land, than the constant and uninterrupted use of it, under a claim of title, as in this case. Under these circumstances, there can be no reasonable doubt of the right of the plaintiff to maintain his action against a stranger. It is a fair presumption, from the evidence, that the defendants were mere trespassers on the land. Failing to show any interest in themselves, or any license from a person having title, they are to be regarded as mere intruders, entering

without right or authority, and acquiring no rights on the land, as against the party in possession. The deed was clearly admissible, to show the nature and extent of the plaintiff's possession. It defined the boundaries of the land, and showed the kind of estate claimed. The tax receipts were also admissible. The payment of taxes indicated that the plaintiff claimed title to the whole tract. It likewise tended to explain the character and extent of his possession.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*