### EDWARD THOMPSON CO. v. AMERICAN LAW BOOK CO.

(Circuit Court of Appeals, Second Circuit. July 1, 1903.)

**1. COPYRIGHT—INFRINGEMENT—USE OF CITATIONS FROM LAW BOOKS.**
   Where the author of a law book collects all the citations available on his subject including those found in a previous copyrighted work on the same subject, and after examining the reports of the cases cited, cites such authorities as he considers applicable in support of his own text—such text being original and in no part copied from the earlier work—such use of the earlier work is a fair use and does not infringe its copyright.

**2. SAME—WORKS SUBJECT TO PROTECTION—PIRATED MATTER.**
   The complainant, the publisher of a law encyclopædia, which furnished the authors of its articles with paragraphs cut from copyrighted digests of other publishers, its authors using such paragraphs in the compilation of their articles, in some instances copying the language of such paragraphs without the consent of the owners of the copyrights, has no standing in a court of equity to charge another with infringement of its own copyright.

**3. EQUITY—HE WHO COMES INTO EQUITY MUST COME WITH CLEAN HANDS.**
   Equity will refuse its aid to a complainant who has himself been guilty of the same inequitable conduct with which he charges respondent.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal from an order granting a preliminary injunction restraining. the infringement of complainant's copyrights. The opinion of the Circuit Court will be found in 121 Fed. 907.

Edmund Wetmore and Augustus T. Gurlitz, for appellant.
Walter Large and Frank P. Prichard, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The complainant is the publisher of two encyclopædias; one of American and English·Law, the other of

Pleading and Practice. The defendant is compiling a work called the "Cyclopedia of Law and Procedure," two volumes of which were published when this action was commenced in December, 1901. The complainant alleges that these volumes infringe its copyrights.

The method adopted by the complainant in preparing the articles for its books was, briefly stated, as follows: When a topic was assigned to a writer, paragraphs cut from the United States Digest, the American Digest and Jacob's Fisher's Digest bearing upon the subject in question were placed in his hands. In this way the writer, without any labor on his part, mental or physical, had before him, not only the authorities collected by others, but also the paragraphs written by others, which were used by him in preparing his article. It is alleged by the defendant that all of the digests thus used were copyrighted and that the copyrights were infringed by the complainant's verbatim appropriation of a large number of these paragraphs, and that, in any event, having adopted the same method which it now denounces as piratical, the complainant is not entitled to equitable relief. The defendant's method was similar to that of the complainant except that it obtained from the owners of the copyrighted digests the right to use these works.

The only act of the defendant which is complained of is this: Lists of all the cases bearing upon a given subject, including the cases found in complainant's books, were put in the hands of the editor chosen to develop that subject. The list of complainant's cases contained authorities not found in the digests. The original reports of these cases were examined by the editor, and, if the cases were found applicable, they were cited by him in support of his article; if not, they were rejected. There is no pretense that a word of the complainant's text has been copied; in fact the defendant's editors were not permitted to open the complainant's books. The list of cases furnished the editor was not copied in the defendant's work and the only use made of the list was as a guide to the volumes where the cases were reported.

Briefly stated, then, the question is this: Is a copyrighted law book infringed by a subsequent work on the same subject where the only accusation against the second author is that he collected all available citations, including those found in the copyrighted work, and, after examining them in text-books and reports, used those which he considered applicable to support his own original text? We are of the opinion that this question must be answered in the negative. The doctrine contended for by the complainant extends the law of copyright beyond its present bounds and if pushed to its logical conclusion will inflict a far greater injury upon literature than it can ever expect to prevent. If it be held that an author cannot consult the authorities collected by his predecessors, the law of copyright, enacted to promote the progress of science and useful arts, will retard that progress. It will be found upon examining the reported cases that there has been a finding of noninfringement unless it appears that the whole or a part of the copyrighted work has been copied, either in hæc verba or by colorable variation.

In Pike v. Nicholas, L. R. 5 Ch. App. 263, it was held that the de-

fendant was not permitted to copy a passage from another author directly from the plaintiff's work, "but having been put on the track, and having looked at that particular part of the book which the plaintiff led him to, he was entitled to make use of every passage from that author which the plaintiff had made use of."

In Morris v. Wright, L. R. 5 Ch. App. 287, it was decided that if the defendant "used the plaintiff's book in order to guide himself to the persons on whom it would be worth his while to call, and for no other purpose, he made a perfectly legitimate use of the plaintiff's book."

In the case of Moffatt v. Gill, 86 Law Times Rep. 465, which the complainant quotes with approval, infringement was found because it was abundantly shown that "not only have the quotations in substance been taken, but the letterpress connecting them has also in substance been taken in a great many instances and particularly in the character sketches." The court, however, expressly recognizes the right of a subsequent author to do what the defendant in the case at bar has done. In speaking of the cases relating to directories the court says:

"You cannot, where another man has compiled a directory, simply take his sheets and reprint them in your own. You are entitled, taking the sheets with you, to go and see whether the existing facts concur with the description in the sheets, and if you do that you may publish the result as your own."

To the same effect is List Pub. Co. v. Keller (C. C.) 30 Fed. 772; Jarrold v. Houlston, 3 Kay & J. 708; Simms v. Stanton (C. C.) 75 Fed. 6; Macgillivray on Copyright, 103; Mead v. West Pub. Co. (C. C.) 80 Fed. 380.

Counsel for complainant in order to illustrate their position put the following question:

"Suppose the author of a dictionary of quotations inserts after each quotation, as is customary, the book and page of the original author, will it be contended that the compiler of a subsequent book of quotations could have his clerk copy a list of all the references contained in the first author's book without copying the quotations and could then go to the original authors and copy the quotations found at the pages indicated by the references? Yet he would have an undoubted right to do this if the contention in the appellant's brief is sound."

Assuming that the question is answered in the negative we do not think the conclusion follows. It may very well be that the second compiler would not be permitted to copy the quotations and for the reasons suggested by Lord Collins in Moffatt v. Gill, supra. He says:

"That [the defendant's contention] leaves out the whole merit; the felicity of the quotation; its adaptability to a particular end; its illustration of a particular characteristic. All these things enter into the choice of one quotation as apart from another. That is a process which may involve gifts both of knowledge and intelligence."

The difficulty with the counsel's hypothesis is that the case stated is not the case made by the proofs. The defendant has not copied a sentence or a word from the complainant's book and, of course, has not appropriated the skill and taste of the complainant in selecting or arranging quotations or any other matter. If, in the case put,

the subsequent compiler had simply made, in connection with other lists, a naked list of the authors quoted, it cannot be doubted that he would have the right to select from their works such quotations as he desired.

It is well known that Motley produced his great work after years of patient research among the original archives preserved at The Hague and other European capitals and that he brought to light and translated documents which had lain dormant for centuries. The data thus collected enabled him to tread an almost undiscovered path of history. But can it be contended that a subsequent historian of the Netherlands would be debarred from consulting the same sources of information because he was guided to them by a list made up from Motley's footnotes? It is thought not. The literature of the law as it exists to-day is the result of evolution. Each author has had the benefit of all that preceded him and has thus been able to add something to the common fund intended to lighten the labors of the profession. It would be a serious blow to jurisprudence were the rule enunciated that the author of a law book is precluded from taking a list of authorities cited by a previous writer on the same subject and making an independent examination of them. Individuals might profit but the development of legal science would be hampered by such a rule,—a rule not of advancement but of retrogression.

The defendant asserts that in no circumstance can the preliminary injunction be upheld, for the reason that the complainant has been guilty of a much more flagrant piracy than that charged against the defendant, and that, therefore, the complainant has no place in a court where clean hands and "a conscience void of offense" are required.

In order to establish this infringement the defendant has presented to the court a volume entitled "Pointers to Complainant's Infringements," which contains a large number of instances of alleged piracy. This exhibit we are not at liberty to consider for the reason that it was not served in time and is no part of the record. But, irrespective of this exhibit, the affidavits describing the method pursued by complainant's editors distinctly charge that they not only used but actually copied paragraphs and syllabi from the copyrighted works of the West Publishing Company and other publishers. This charge has not been denied, but an attempt has been made in the brief to excuse and palliate it. That there have been instances of piracy is, in substance, admitted in the complainant's brief where it is said:

"While it is undoubtedly true that among the large number of writers employed by it, some may have been found who through incompetence or carelessness, or a desire to save labor, have used the language found in digests or reports instead of their own, it is very clear from the affidavits that the plaintiff's work has been made up from a study of the original opinions, the digests being used, as it was proper that they should be used, as books of reference to find opinions."

We do not intend to pass upon the question of complainant's infringement as presented by the exhibit referred to, for the reason that the complainant has had no opportunity to meet the charge. We see, however, no escape from the conclusion that if the defendant is an infringer, so is the complainant, for their methods in examining the authorities cited in prior copyrighted works are substantially identical.

For the reasons before given we do not think that the complainant's acts, when limited to the use of the cases cited in the copyrighted digests, sustain the charge of infringement. Indeed, it would seem quite impossible to compile an encyclopædia, which includes a general survey of antecedent knowledge, without doing exactly what both parties did in this regard. But if it were piracy in one it was piracy in the other and a literary pirate is not entitled to consideration in a court of equity. Consistency requires that the defendant should not be punished for doing that which the complainant does with perfect impunity. An author who has pirated a large part of his work from others is not entitled to have his copyright protected. This proposition is well stated in complainant's work as follows:

"When it is said that a mere new disposition of existing materials may be original, this must be taken with the limitation that the materials are such as may be lawfully used; there can be no protection for that which is itself a piracy." Am. & Eng. En. of Law (2d Ed.) vol. 7, p. 536.

In Carey v. Faden, 5 Ves. 24, Lord Eldon said:

"What right had the plaintiff to the original work? If I was to do strict justice, I should order the defendants to take out of their book all they have taken from the plaintiff, and, reciprocally, the plaintiff to take out of his book all he has taken from Patterson. I think the plaintiff may be contented that a bill is not filed against him."

·It is stated in the defendant's brief that the precise question has not been decided in this country and the court has been unable to find such an authority, although the point was presented in Banks v. McDivitt, 13 Blatchf. 163, Fed. Cas. No. 961, and Judge Shipman intimated, at page 169, that the defendant's position if supported by the facts would be sound in law. Upon the general proposition that equity will refuse its aid to a suitor who has himself been guilty of the same inequitable conduct which he denounces in others, see Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436, 27 L. Ed. 706; Hilson Co. v. Foster (C. C.) 80 Fed. 896, 901, and cases cited.

Without intending to decide the question of complainant's infringement we think sufficient doubt is presented by the evidence properly before the court to warrant the refusal of a preliminary injunction.

It follows that the order should be reversed with costs.